BELFAST AND ANGELICA PLANK ROAD COMPANY, Respondents, *v.* CAL. T. CHAMBERLAIN *et al.*, Appellants.

Plank road companies formed under the act of May 7, 1847, and the acts amending the same, under the act of March 28, 1854, do not forfeit their powers and franchises by any acts or omissions not willful or malicious on their part.

Where any plank road or turnpike company organized under the laws of this State shall have been in actual operation, and in possession of the road upon which it has taken tolls for five consecutive years next preceding the commencement of the action, parol proof of its corporate existence and use, is sufficient for all purposes of the action, unless the opposing party, by answer duly verified, stating the nature of his title and right to immediate possession and use, set up title in himself to the road or to some part thereof.

The provision of the statute of April 18, 1855, operates as a limitation upon the right of the defendants to put in issue or controvert the regularity of the company's organization, or its title to its franchises, after a possession and enjoyment of five years, except in the case of setting up title in himself, etc.

This title to the road, it seems, is not a mere easement, such as every member of community has to pass over a highway; but is of a nature giving the claimant the right to the immediate possession and use of the road.

DAVIES, J. The two first grounds, upon which the defendants moved for a nonsuit, covered the same points as are embraced in the two exceptions to the evidence offered on the part of the plaintiffs and admitted, and will be considered together.

First. The plaintiffs offered in evidence, to sustain the issue that it was a corporation, the articles of association and the affidavits annexed, and the same were objected to on the ground that the affidavit did not state that five per cent in cash had been paid in to the directors of the company. The plaintiffs allege in their complaint that they had constructed a plank road for a distance of six miles or thereabout, and had for six years then last past had a toll-gate erected thereon, at which they had collected toll, as by the act they were authorized to do. This allegation is not denied in the answer, and the defendants distinctly aver in their answer that the plaintiffs had constructed their said road. Evidence was offered, tending to show the organization of the company, and user, under the charter.

The act of March 28, 1854 (Laws of 1854, ch. 87), was passed doubtless to cover any defects which might exist in the organization of the numerous plank road companies then existing throughout the State. Section 6 of that act declares that every company formed or organized under the plank road act of 1847, and the several acts amendatory thereof, shall be deemed to be a valid corporation, although such company may not have complied with the requirements of such acts in the formation and organization of such company; and it is declared that no act or omission on the part of the company, its stockholders or officers, shall work a forfeiture of its corporate powers or franchises, unless the same was malicious and willful. The first section of the act of April 18, 1855 (Laws of 1855, ch. 546), declares that in any action brought by any plank road company, organized under the laws of this State, which shall have been in actual operation, and being in possession of a road upon which they have taken toll for five consecutive years next preceding the commencement of the action, parol proof of such corporate existence and use shall be sufficient for all purposes of the action, unless the opposing party shall set up a claim in his answer, duly verified, of title in himself, to the road or to some part thereof.

No such claim of title was set up in the answer in this action, and it being admitted by the answer that the plaintiffs had constructed and owned a plank road, and then had, and for six years last past, had a toll-gate erected thereon, at which they have collected tolls, such facts bring these plaintiffs within the operation of the first section of the last above referred to act, and parol proof of their corporate existence was all that was required of them. The use was admitted, and the exceptions taken to the admission of the testimony were untenable, and the nonsuit on the two grounds first stated was properly denied. The third ground of nonsuit was that Chamberlain and the defendants Willetts were each to pay his and their own toll to the plaintiffs, and that the plaintiffs had failed to show any copartnership or joint liability, by or between the defendants in this action. There

was some evidence on these points which the referee, sitting as a jury, was to weigh and consider, and he properly, therefore, declined to nonsuit the plaintiffs on this third ground. And on the important question in the case, namely, the joint liability of the defendants for the total amount of tolls on all the timber passing over their road, the referee found, as matter of fact, that during the winter of 1857 and 1858, the defendants moved a quantity of timber from certain points mentioned; that the defendants respectively employed men and teams to move said timber, and personally took the direction and control of the work, and that the defendants Willetts were first the owners of the timber, and before moving the same, proposed to the defendant Chamberlain that he should become the owner of a third part thereof, and that during the progress of the work of moving said timber he accepted said proposition and became such owner. And that all the teams engaged in moving said timber passed over the plaintiffs' road and through their said gate. This finding, in connection with the other facts, establishes beyond all doubt, the joint ownership of all the defendants of the timber moved over the plaintiffs' road and through their gate; and such ownership, I think it is fairly inferable, referred back to a period anterior to the moving of any of said timber. It is found that the defendants Willetts, before any of the timber was moved, proposed to Chamberlain to become a joint owner with them of the timber, and that after they had commenced moving the same, he accepted their proposition. This acceptance, I think, has relation back to the time when the proposition was made, and that the reasonable inference is, that Chamberlain came in as joint owner, as of that time, namely, before any of the timber was moved. We have no facts before us to indicate what proportion of the timber was moved before Chamberlain decided to accept the proposition of the Willetts, but we have the fact distinctly found that the defendants moved the timber, and that they respectively employed teams and men to move the same. The tally kept by the toll-keeper, at the defendants' request, determined nothing as to the liabilities of the defendants,

, and in no sense qualified or limited the claim of the plaintiffs for the tolls. It was obviously kept for the convenience of ·the defendants, and for the purpose of adjusting accounts between themselves. It demonstrates that the defendant Chamberlain must have drawn far beyond the proportion he, as owner of one-third of the timber, was under obligation to draw, for the amount of tolls charged against his teams was fifty-two dollars, while that charged against the teams of the defendants Willetts amounted to sixty dollars and fifty-six cents. It furnishes, therefore, no indication that the quantity drawn by the teams of Chamberlain was confined to his one-third, but the contrary. The conclusions of the referee upon these facts are clearly correct, and the judgment should be affirmed, with costs.

BROWN, J. The Belfast and Angelica Plank Road Company, was incorporated in March, 1851, by articles of association made under the act of the 7th May, 1847, and the acts amendatory thereto. The requirements of the statutes° seem to have been complied with in every essential particular, except the alleged omission relied upon by the defendants, to which I shall presently refer. The various papers or certified copies thereof, required to constitute the corporation, were given in evidence upon the trial, and are set out in the case. The second section of the act referred to provided, amongst other things, that the articles of association should not be filed with the secretary of State until there was indorsed thereon, or annexed thereto, an affidavit made by at least three of the directors named in such articles; that the amount of capital stock required by the first section has been subscribed, and five per cent on the amount actually paid in. Upon an inspection of the affidavit in the present case, it appears that the latter requisition of the statute has been omitted. A compliance, in this particular, is claimed by the defendants to be condition precedent to the creation of the corporation, which could not be dispensed with, and without which no corporation was created. It appears, however, that by the 13th section of the act of the 6th April, 1849, in relation to

plank and turnpike roads, the 1st section of the act of May 7th, 1847, was amended by striking therefrom out of the 10th and 11th lines, the words " and five per cent paid thereon, as hereinafter required." The section, so amended, would leave the associates to proceed to organize their company and elect their directors, without the payment of the five per cent. It is true the section which follows it and provides for filing the articles of association and the affidavit, still retains the provision requiring the payment of the five per cent to be set out in the affidavit. But when the actual payment had ceased to be an essential requisite, and was no longer required by reasonable intendment and implication, the proof of it ceased to be a condition necessary to the creation of the corporation.

The next objection taken by the defendants to the plaintiffs' right to maintain the action, is the insufficiency of the proof to show the extinguishment of the public easement over the bed of the road, that having been a highway for more than twenty years before the plaintiffs' articles of association were signed and filed. The fifth section of the act of March 16th, 1856, to amend the act for the incorporation of companies to construct plank and turnpike roads, prohibits the supervisor and commissioners of highways from making any agreement with any plank road company for the right to take and use any part of the public highway for the uses of the road, without first obtaining the consent, in writing, of two-thirds of all the owners of lands along such high-way who shall actually reside on that part of the highway on which the plank road is to be constructed. The two certificates of release read in evidence upon the trial, one from persons claiming to be inhabitants of the town of Angelica, and the other from persons claiming to be inhabitants of the town of Belfast, the towns of Angelica and Belfast being the towns in which the plaintiffs' road is located, do not fulfill the requirements of the statute. It does not appear that the persons executing the certificates were the owners of lands lying along the highway taken for the road, nor whether they are two-thirds in number of such owners, and in this respect the proof must be regarded as

defective. It is to be observed, however, that the defendants passed over the road and through the toll-gate, without claim that the road was a public highway, but with a request to the toll-gatherer that the tolls might be charged to them separately, and a promise, to be implied certainly, that they would pay the tolls in due season. The referee found as a fact, upon evidence not open to any objection, that the plaintiffs had constructed the road, which was six miles in length, in the towns of Angelica and Belfast, and had erected a gate thereon and taken toll thereat for five consecutive years next preceding the commencement of the action. If we should feel ourselves free to say that, after what has occurred, the defendants could raise this question of want of consent by the land owners — which I am far from asserting — then I am of opinion that the irregularity and error is cured by the provisions of the two statutes to which I shall refer. The first is to be found in the act of the 28th March, 1854, section six, declaring that companies formed under the act of May 7th, 1847, and the acts amending the same, shall be deemed valid corporations, though they may not have complied with the requirements of such acts in the formation and organization of such companies preparatory to the construction of those roads. And no acts or omissions shall work a forfeiture of their powers and franchises unless the same was willful and malicious. The office of this section is to save the companies from any disabilities and injuries resulting from defects or omissions in the forms and manner of their organization. The other provision to which I refer is in the first section of the act of the 18th April, 1855, declaring that in actions brought by or against plank and turnpike companies, organized under the laws of the State, which shall have been in actual operation, and in possession of the road upon which they have taken tolls for five consecutive years next preceding the commencement of the action, parol proof of such corporate existence and use shall be sufficient for all the purposes of the action, unless the opposing party shall set up title in himself to the road, or some part of it, by answer duly verified, stating the nature of his title, and right to the

immediate possession and use thereof. This provision operates as a limitation upon the rights of a defendant to put in issue or controvert the regularity of the plank road company's organization, or its title to the franchises after a possession and enjoyment of five years, except in the single instance where he shall set up title in himself to the road or some part of it. The title spoken of is not a mere easement such as every member of the community has to pass over a public highway, because the title must be of such a nature as to give the claimant the right to the immediate possession as well as the use of the road. These considerations seem to me to dispose of the defendants' objections to the plaintiffs' right to maintain the action as a corporation, with the usual title to the road in question.

We are next to consider whether the three defendants are jointly liable for the tolls claimed. The men and teams employed by the defendants respectively moved the timber on the road to the Genesee Valley canal, where it was deposited promiscuously at one common point, the defendants personally taking the control and direction of the work. The two defendants Willetts first became the owners of the timber, and before moving they proposed to the defendant Chamberlain to become the owner of the third part thereof. While the movement of the timber was in progress, Chamberlain accepted the proposition and became the owner of an undivided third of the timber. All the teams employed in moving the timber passed over the plaintiff's road and through the toll-gate, the gate-keeper keeping a separate tally, by request of the defendants, of the teams of each of them as they passed the gate. The tolls for the teams of Chamberlain amounted to the sum of $52, and those of the defendants Willetts amounted to the sum of $60.56. The timber was·sold upon joint account by the defendants after it was delivered at the canal, and after deducting the purchase price and the expenses of moving it, the proceeds were equally divided amongst the defendants.

The transaction has all the elements of a partnership. The defendants became joint owners, sharing equally the profit

and loss of the enterprise. This created a partnership in regard to the timber, and imposed upon them all the duties and obligations of copartners. (3 Kent's Com., 26; Collyer on Partnership, 12.) Some of the tolls, however, accrued before Chamberlain acquired his interest, and in respect to these it is said there can be no joint liability because the debt was contracted by the Willetts and not by Chamberlain. This argument is more fanciful than real, and in any aspect is purely technical. The teams of the latter were upon the road, as were the teams of the former, during the whole time of the movement of the timber. As the tolls were not paid as each team passed the gate, but were charged in the tally memorandum, at the request of the defendants, it is fair to infer that payment was not to be made until the whole work was completed. Before that was done, the defendants became joint owners and partners, liable for the debts incurred in the progress of the enterprise, and sharing in the benefits resulting therefrom. And the proof shows that before the commencement of this action the proceeds compounded of the value of the timber, the labor bestowed upon its transportation, including the tolls for the use of the road, were received and shared equally by the defendants. I see no difficulty in implying a joint promise made by the three defendants upon a sufficient consideration to pay the tolls for the use of the road. And although the promise cannot strictly be regarded as made to the plaintiffs, it belongs to that class of cases where the plaintiff, although not the promisee, may enforce performance of a promise made upon good consideration for his benefit. Had any two of the defendants died before the sale of the timber and its conversion into money, the other defendant would have become invested with the right to the property in the timber as survivor, subject to the debts of the concern and the rights of the representatives of the deceased partners, and amongst those debts the tolls claimed in this action would have been justly included. The judgment of the General Term should be affirmed with costs.

Judgment affirmed.